UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT ALSPAUGH, JR.,

    Plaintiff,

v.                                                          Case No. 2:07-cv-136
                                                               HON. R. ALLAN EDGAR

T. DAHL, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Robert Alspaugh, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Lieutenant T. Dahl, Corrections Officer Unknown Keveren, Corrections Officer Unknown Buckner, Corrections Officer Unknown Marshall, Corrections Officer Unknown Carron, Assistant Deputy Warden Robert Napel, Grievance Coordinator Mike Laitinen, Prisoner Affairs Manager James Armstrong, Inspector Unknown Place, Warden Gerald Hofbauer, Jack Bellinger, R.N., and the Michigan Department of Corrections (MDOC).

Plaintiff's complaint involves events that occurred while he was housed at the Marquette Branch Prison (MBP). On August 27, 2005, Defendant Dahl ordered Plaintiff to come to the front of his cell so that he could be restrained before being removed. Although Plaintiff was already at the front of his cell, Defendant Dahl left without restraining him, but returned soon after and ordered Plaintiff to prepare to be strip searched. Plaintiff complied, removing his shirt and shorts. Nonetheless, Defendant Dahl and other members of the extraction team sprayed Plaintiff in

the face with pepper spray. Defendants knew that the pepper spray posed a particularly serious risk to Plaintiff's health due to the fact that he is HIV positive and has Hepatitis C. Plaintiff was escorted to the shower area where his requests for medical attention were ignored. A subsequent kite requesting medical attention was also ignored.

On September 17, 2007, the court issued an order dismissing Plaintiff's claims against Defendant MDOC as being barred by the Eleventh Amendment, as well as his claims against Defendants Laitinen, Armstrong, and Place. Therefore, the only remaining claims in this case are Plaintiff's claims against Defendants Dahl, Keveren, Buckner, Marshall, Carron, Napel, Hofbauer, and Bellinger.

Plaintiff claims that Defendants Dahl, Keveren, Buckner, Marshall, Carron, Napel, Hofbauer, and Bellinger violated his rights under the Eighth Amendment to the United States Constitution. For relief, Plaintiff seeks compensatory and punitive damages in the aggregate amount of $145, 000.

Presently before the Court is the Defendants' Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #26 and #38), as well as Plaintiff's Motion for Summary Judgment (docket #42). Responses have been filed and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Dahl, Keveren, Buckner, Marshall, Carron, Napel and Hofbauer argue that they are entitled to summary judgment because the amount of force used was both reasonable and necessary. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

In their motion for summary judgment, Defendants Dahl, Keveren, Buckner, Marshall, Carron, Napel and Hofbauer state that Defendant Napel approved the use of a chemical agent to remove Plaintiff from his cell because Plaintiff had broken the sprinkler head in his cell. Defendant Napel attests that this threatened the entire housing unit because breaking the sprinkler head inactivated the fire suppression system, which posed a considerable risk to both prisoners and staff and that chemical agents were used only to restore order. (*See* Robert Napel's Affidavit, Exhibit 2 to Defendants' motion for summary judgment.)

Defendant Dahl attests that he was called to Plaintiff's cell after Plaintiff had broken the sprinkler head, causing the cell and gallery to flood with water and disabling the fire suppression system. Defendant Dahl states that when he ordered Plaintiff to allow the application of restraints, Plaintiff stated that Defendant Dahl would have to kill him. Defendant Dahl explained that Plaintiff's refusal would result in a cell extraction squad, but Plaintiff continued to be noncompliant. The cell extraction squad assembled and Plaintiff was determined by health care to be a normal risk for chemical agents. Defendant Dahl attests that he applied chemical agents in an MDOC approved manner. After Plaintiff was removed from his cell, he was immediately escorted to a shower stall away from the chemical agent. Plaintiff was returned to his cell after the sprinkler head was plugged and he had been seen by health care staff. (*See* Tim Dahl's Affidavit, Exhibit 3 to Defendants' motion for summary judgment.) Defendants also offer the affidavits of Defendants Kevern, Buckner, and Marshall, who attest that they participated in moving Plaintiff from his cell and that after use of the chemical agent, there were no further incidents. (*See* Affidavits of Steve Kevern, Lew Buckner, and Jeff Marshall, Exhibits 4-6, to Defendants' motion for summary judgment.)

A copy of the critical incident report is also attached to Defendants' motion for summary judgment. According to the report, Plaintiff was ordered by Defendant Dahl to come to

the front of his cell and allow restraints to be applied. Plaintiff was warned that a chemical agent would be used, but Plaintiff refused to comply. Defendant Dahl then applied the chemical agent in one short three second burst. Following this, Plaintiff allowed restraints to be applied by Defendant Buckner. Plaintiff was then escorted to the shower stall by Defendants Buckner and Kevern, and was kept there until his cell was cleaned and the sprinklers plugged. Defendant Bellinger checked Plaintiff while he was in the shower stall and it was noted that Plaintiff's respirations were unlabored, that Plaintiff was talking and shouting, and that no coughing or wheezing was observed. Defendant Bellinger did not observe any medical concerns. Defendants Buckner and Kevern then took Plaintiff back to his cell and removed his restraints without further incident. Defendant Marshall was also available for escort and permission for use of the chemical agent was given by Defendant Napel. The incident was videotaped. (*See* August 27, 2005 Critical Incident Report, Exhibit 8 to Defendants' motion for summary judgment.)

In response to the motion for summary judgment, Plaintiff concedes that he broke his sprinkler head and that when Defendant Dahl first came to his cell, he refused to come to the front of the cell because he did not observe any restraints. When Defendant Dahl returned with the move team and the chemical agent, Plaintiff claims that he immediately came to the front of the cell to be restrained, but was sprayed anyway. Plaintiff alleges that Defendants violated his rights by applying a chemical agent after he indicated that he would allow himself to be placed in restraints. However, Plaintiff concedes that he had already refused prior requests by Defendant Dahl to come to the front of the cell. Even if it is true that Plaintiff eventually relented and indicated that he would allow himself to be placed in restraints, Defendants' use of force was reasonable given Plaintiff's prior repeated refusals to submit to authority.

The Sixth Circuit has noted that inmates cannot be permitted to decide which orders they will obey and when they will obey them. *See Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). In circumstances where lawful orders are being disregarded, prison officials are entitled to use a reasonable amount of force to obtain compliance. *Id.* "One can quickly reason what would happen in a maximum security prison without proper discipline." *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). In an unpublished case addressing this issue, the Sixth Circuit stated:

> Plaintiff was sprayed with gas only after he refused to allow Officer Beesley to place him in restraints. Under these circumstances, the defendants acted reasonably in spraying gas at plaintiff. This allowed them to restrain plaintiff in a more peaceful manner. Therefore, it was plaintiff's own conduct which necessitated the use of the gas.

*Knuckles El v. Koskinen*, No. 97-1642, 1998 WL 415847, at *2 (6th Cir. June 16, 1998), *cert. denied* 525 U.S. 951 (1998). Similarly, Plaintiff's own lack of obeisance by refusing to allow his food slot to be closed and to be placed in restraints required the use of force to obtain his compliance.

The decision to use a chemical agent to obtain physical control is generally preferable to the use of physical force. The response team could have attempted a "cell-rush" with shields, truncheons, and handcuffs to forcibly enter Plaintiff's cell in an attempt to subdue and restrain him. Other courts have found that these types of physical confrontations are less safe than using tear gas or mace because of the greater risk of injury to staff, the inmate, or both. *Caldwell*, 968 F.2d at 602; *Soto*, 744 F.2d at 1262. Thus, the Defendants in this action chose to use a lesser degree of force. Given the facts in this case, the decision to use a chemical agent in order to place Plaintiff in restraints did not violate the Eighth Amendment.

Moreover, in the opinion of the undersigned, one short burst of a chemical agent was a *de minimis* use of force that did not violate plaintiff's Eighth Amendment rights. Every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action, *see Hudson v.*

*McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), and the prisoner must show that he sustained more than de minimis injury in order to support a viable excessive force claim. *See id.* at 9-10; *Thaddeus-X v. Blatter,* 175 F.3d 378, 402 (6th Cir.1999) (en banc). *See also Benson v. Carlton,* No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug.9, 2000) (whirling sensation in prisoner's head after fear of guard caused him to skip supper constituted a de minimis injury and did not support claim for metal or emotional suffering under the Eighth Amendment); *Scott v. Churchill,* No. 97-2061, 2000 WL 519148, at *2 (6th Cir. April 6, 2000) (plaintiff's claim that guard grabbed his neck and threatened him did not rise to the level of an Eighth Amendment violation). Plaintiff does not show that he suffered physical injury from the incident or required medical attention for anything other than expected discomfort as result of his exposure to the chemical agent.

In his complaint, Plaintiff claims that Defendants conspired to violate his civil rights by unnecessarily spraying him with a chemical agent. Defendants Dahl, Keveren, Buckner, Marshall, Carron, Napel and Hofbauer state that they are entitled to summary judgment on Plaintiff's civil conspiracy claim because there was no underlying wrongful conduct. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. As noted above, there is no genuine issue of material fact that Defendants Dahl, Keveren, Buckner, Marshall, Carron, Napel and Hofbauer violated Plaintiff's Eighth Amendment rights. Therefore, they are entitled to summary judgment on Plaintiff's civil conspiracy claim.

In his brief in support of his motion for summary judgment, Defendant Bellinger states that he is entitled to summary judgment on Plaintiff's Eighth Amendment denial of medical care claim. A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that

> a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Defendant Bellinger states that Plaintiff has not shown that he had a medical condition that was sufficiently serious to satisfy the objective component of his Eighth Amendment claim. Defendant Bellinger contends that the fact that Plaintiff suffered from some discomfort and irritation, which is the point of chemical agents, does not rise to the level of an Eighth Amendment violation. In addition, Defendant Bellinger states that he did not act with deliberate indifference. In his affidavit, Defendant Bellinger attests that on August 27, 2005, he was contacted by custody staff to ascertain the degree of risk use of chemical agents would pose on Plaintiff. Defendant Bellinger reviewed Plaintiff's medical records and determined that he constituted a normal risk for the use of chemical agents as Plaintiff had no record of hypertension, cardiovascular disease, respiratory disease including asthma, multiple allergies, pregnancy or mental illness. After chemical agents were dispersed and restraints were applied, Plaintiff was taken to the showers, where he was evaluated by Defendant Bellinger. Defendant Bellinger attests that Plaintiff showed no signs of coughing, wheezing, shortness of breath, or other respiratory problems. Defendant Bellinger states that Plaintiff was shouting across an open bay area to other inmates. Finally, Defendant Bellinger attests that there is no record in Plaintiff's medical files that he ever requested further treatment related to the use of the chemical agent. (*See* Jack Bellinger's Affidavit, Exhibit 1 to Defendant Bellinger's motion for summary judgment.)

In response to Defendant Bellinger's motion for summary judgment, Plaintiff reasserts the allegations set forth in his complaint. However, Plaintiff fails to offer any additional evidence in support of his claim. As noted above, where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5. Therefore, the undersigned recommends that Defendant

Bellinger be granted summary judgment on Plaintiff's Eighth Amendment claim that he was denied medical care.

The undersigned also recommends that Defendant Bellinger be granted summary judgment on Plaintiff's civil conspiracy claim. As noted above, in order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. Because there is no genuine issue of material fact that Defendant Bellinger violated Plaintiff's Eighth Amendment rights, there was no overt act.

Finally, Defendants Dahl, Keveren, Buckner, Marshall, Carron, Napel, Hofbauer and Bellinger claim that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable

in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S.

226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). As noted above, Plaintiff's Eighth Amendment and civil conspiracy claims lack merit. Therefore, Defendants Dahl, Keveren, Buckner, Marshall, Carron, Napel, Hofbauer and Bellinger are entitled to qualified immunity.

Plaintiff has also filed a motion for summary judgment in which he claims that his treatment at the hands of Defendants violated his constitutional rights. However, as noted above, there is no genuine issue of material fact that the use of a chemical agent under the circumstances in this case did not violate Plaintiff's constitutional rights. Therefore, Plaintiff's motion for summary judgment lacks merit.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, it is recommended that Defendants' motions for summary judgment (docket #26 and #38) be granted, that Plaintiff's Motion for Summary Judgment (docket #42) be denied, and that this case be dismissed in its entirety.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 18, 2008